(No. 25126.—

THE CITY OF CHICAGO, Appellee, *vs.* THE CHICAGO BEVER-
AGE COMPANY, Appellant.

*Opinion filed June 19, 1939—Rehearing denied October 4, 1939.*

GREGORY A. GELDERMAN, for appellant.

BARNET HODES, Corporation Counsel, (MARTIN H.
Foss, of counsel,) for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

Appellant, the Chicago Beverage Company, was con-
victed in the municipal court of Chicago of violating sec-
tion 3144 of the Revised Chicago Code of 1931, in operat-
ing its business without a license. The trial judge has cer-

tified that the validity of a municipal ordinance is involved and the public interest requires a direct appeal to this court.

Appellant is engaged in the business of manufacturing, bottling and selling, at wholesale, carbonated beverages or soft drinks, such as ginger ale, pop, root beer and carbonated water. These soft drinks are composed of citric acid, sugar, ginger extract and other flavoring extracts. Section 3144 of the Revised Chicago Code provides that no person or corporation shall operate a wholesale food establishment without a license. It defines "wholesale food establishment" as any building or establishment "used for the preparation, manufacture, canning, bottling, packing, distribution, selling, or offering or keeping for sale at wholesale, any article of food, confection, condiment or drink used or intended for human consumption or any article which is the ingredient of or is used for or is mixed with or enters into the composition of any such food, confection, condiment or drink."

The sole question presented by this appeal is whether article 5 of the Cities and Villages act empowers municipalities to regulate the processing or manufacture of soft drinks of the type made by appellant.

It is fundamental that a municipal corporation possesses no inherent powers, but its existence and its powers are derived from the General Assembly, and in order to legislate upon or in reference to a particular subject or occupation it must be able to point out the statute which gives it the power to do so. (*Village of Kincaid* v. *Vecchi,* 332 Ill. 586.) It has also been held that the express enumeration in article 5 of the Cities and Villages act of the occupations or businesses, not nuisances *per se,* over which a city or village is given control, is the exclusion of all other occupations or businesses. (*Village of Kincaid* v. *Vecchi, supra; City of Rockford* v. *Nolan,* 316 Ill. 60; *Barnard & Miller* v. *City of Chicago,* 316 id. 519; *City of Chicago* v. *M. & M. Hotel Co.* 248 id. 264.) For this reason section 78 of arti-

cle 5 (Ill. Rev. Stat. 1937, chap. 24, par. 65.77) which is a general health clause, does not aid in determining whether appellee has been empowered to regulate the wholesale business of soft drinks.

Appellant relies on section 46 of article 5 (Ill. Rev. Stat. 1937, chap. 24, par. 65.45) as showing a legislative intention to exclude soft drinks from the field of municipal regulation. Section 46 empowers municipalities to regulate the sale and giving away of any intoxicating, malt, vinous, mixed or fermented liquor. Appellant argues that by enumerating certain beverages the legislature evinced an intention to exclude all others. However, as we pointed out in *City of Chicago* v. *Murphy*, 313 Ill. 98, section 46, *supra*, authorizes municipalities to license and regulate the sale of liquors which are intoxicating and others there named which may or may not be. It relates only to liquors, and has no relevance in determining whether, by some other section, the legislature has conferred on municipalities the power to regulate the manufacture or processing of soft drinks of the kind here involved. Section 46 is not relied on by appellee, and it need not be further considered.

Our question narrows to whether sections 50 and 53 of article 5 (Ill. Rev. Stat. 1937, chap. 24, pars. 65.49 and 65.52) relied on by appellee, confer power on municipalities to regulate soft drinks. Section 50 provides municipalities shall have power "To regulate the sale of meats, poultry, fish, butter, cheese, lard, vegetables, and all other provisions, and to provide for place and manner of selling the same and to control the location thereof." Section 53 empowers municipalities "To provide for and regulate the inspection of meats, poultry, fish, butter, cheese, lard, vegetables, cotton, tobacco, flour, meal and other provisions."

In our opinion the cases cited by appellant are not in point. In *Village of Westville* v. *Rainwater*, 294 Ill. 409, the only question was whether municipalities had the right to license persons delivering from the brewery to retailers

beverages containing less than one-half of one per cent of alcohol. We held they did not have the right. However, sections 50 and 53 were not mentioned. Moreover the opinion stated that the question of the right to license retailers of soft drinks was not involved. *City of Chicago* v. *Murphy, supra,* construed section 46 only, and held that it authorized the licensing and regulation of the sale of intoxicating liquors and of non-intoxicating malt, vinous, mixed or fermented liquors; that so far as the ordinance related to the species of liquor named in the statute, it was valid. Sections 50 and 53 were not involved, and that case has no bearing on the powers granted by them.

*Village of Kincaid* v. *Vecchi, supra,* involved an ordinance prohibiting the sale, exchange, giving away or disposing of any soft drink without first obtaining a license. After pointing out that the ordinance was broad enough to cover the giving away of a cup of tea or glass of lemonade, and also that the ordinance forbade the sale of soft drinks at open-air stands, we held section 46 conferred no power on municipalities to regulate the sale of pop or soda water. We also held a municipality has no general police power to license businesses, and that none of the general sections, such as 78, had any bearing on the issue. Sections 50 and 53 were not mentioned, so that case is not controlling.

Sections 50 and 53 of article 5 have been construed by this court many times and we have held they include food articles not specifically mentioned in them. It cannot be said they apply only to solid foods, for we have held they empower municipalities to regulate and inspect the sale of milk. (*City of Chicago* v. *Bowman Dairy Co.* 234 Ill. 294; *Koy* v. *City of Chicago,* 263 id. 122.) They include ice cream (*City of Chicago* v. *Union Ice Cream Manf. Co.* 252 Ill. 311) and bakery products. *City of Chicago* v. *Drogasawacz,* 256 Ill. 34.

In *Crackerjack Co.* v. *City of Chicago,* 330 Ill. 320, in which this same ordinance was involved, we held confec-

tions are "other provisions" within the meaning of sections 50 and 53. We said: "It is argued that clauses 50 and 53, relied on in part by appellee, not embracing candy and confectionery as subjects of regulation and inspection, afford no authority for regulating or inspecting the business of appellants. But it was held in *City of Chicago* v. *Drogasawacz, supra,* that the general words 'and other provisions' in those clauses include bakery products, which clearly are food. Bouvier's Law dictionary defines 'provisions' as food for man; victuals. In *Savage* v. *Jones,* 225 U. S. 501, 56 L. ed. 1182, it was said the word 'food' used in the Federal Pure Food law, includes all articles used for food, drink, confectionery or condiment for man or other animals, whether simple, mixed or compound. In the Pure Food act of this State confectionery is included in the catalogue of foods."

*City of Chicago* v. *Arbuckle Bros.* 344 Ill. 597, also involved this same ordinance. It was held valid as applying to the business of receiving, packing and selling at wholesale, coffees, teas, spices, and flavoring extracts. After quoting dictionary definitions of "provisions" as meaning food or any kind of eatables, we held coffee, tea, spices, and flavoring extracts are included in the term "other provisions." We also quoted that portion of the Pure Food act of this State defining "food" as "all articles used for food, drink, confectionery or condiment by man or other animals, whether simple, mixed or compound and any substance used as a constituent in the manufacture thereof."

It will thus be seen that "other provisions" and "all other provisions" have been interpreted as broad and general terms, and to be the equivalent of "food," as defined in the Pure Food act of this State. While the sections in question are not artfully drafted and their meaning free from doubt, we are of the opinion they have been construed in accordance with the intention of the legislature. It can not be contended that the definition "all articles used for

food, drink, confection or condiment" does not embrace soft drinks or carbonated beverages. Under the Federal statute containing practically the same definition of food as the Illinois Pure Food act, "Coca Cola" was held to be an article of food. (*United States* v. *Coca Cola Co.* 241 U. S. 265.) We, therefore, hold that sections 50 and 53 of article 5 authorize the licensing of appellant's business.

The judgment of the municipal court of Chicago is affirmed.

*Judgment affirmed.*